UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | 1:12-cr-133 | SEB-TAB |
| | ) | | |
| JOHN DOBBINS, | ) | -- 15 | |
| HEATHER HECKMAN, | ) | -- 18 | |
| JOSEPH JOHNSON, | ) | -- 25 | |
| LEEANN BROCK, | ) | -- 28 | |
| JOSHUA MILLER, and | ) | -- 29 | |
| EZEKIEL JONES, | ) | -- 37 | |
| | ) | | |
| Defendants. | ) | | |

**<u>ORDER DENYING DEFENDANTS= MOTION TO SUPPRESS WIRETAPS</u>**
**(Docket Nos. 669, 684, 686 & 692)**

This matter is before the Court Defendant Joshua Miller's Motion to Suppress Wiretap Evidence filed on June 5, 2013 (at Docket No. 669), which was joined in by Defendants Heather Heckman (at Docket No. 671), Joseph Johnson (at Docket No. 684), LeeAnn Brock (at Docket No. 686), Jon Dobbins (at Docket No. 706), and Ezekiel Jones (at Docket No. 692).1 Defendants assert that the Government did not establish in its

---

1 The Government does not contest the standing of Defendants Miller, Heckman, Brock and Dobbins to challenge the wire surveillance. However, the Government's counsel does contend that Defendants Johnson (Def 25) and Jones (Def 37) lack standing to bring this motion because they were incarcerated in the Indiana Department of Corrections during the pendency of the court authorized wire surveillance and thus do not and cannot claim a reasonable expectation of privacy in the conversations on contraband cell phone they were using as they were serving their prison sentences, pursuant to the holdings in <u>Lanza v. New York</u>, 370 U.S. 139, 143 (1962); and <u>Ingraham v. Wright</u>, 430 U.S. 651, 669 (1977). A prisoner does not retain a reasonable expectation of privacy in a prison cell. Defendants Johnson and Jones do not contest the Government's lack of standing argument. We agree with the substance of these

1

applications for wiretap authority filed with the court any necessity for conducting wire surveillance, as required by 18 U.S.C. ' 2518(1)(c), and thus that the intercepted telephone communications should be suppressed. The pending motion has been fully briefed by the parties, and, based on our review of the briefing and the applicable principles of law explicated below, the Motion to Suppress Wiretap Evidence is <u>DENIED</u>.

## I. FACTUAL BACKGROUND

The Government sought and received three separate court orders authorizing wire surveillance in this investigation. Defendants challenge the affidavits filed in support of each application, arguing that none of them meets the requirements for establishing necessity set out in 18 U.S.C. ' 2518(1)(c).

This investigation began in November 2010 when an inmate of the Indiana Department of Corrections (IDOC) provided information to the Federal Bureau of Investigation relating to alleged illegal activities by certain other inmates who were members of either the Aryan Brotherhood, a White Supremacist gang, or another gang operating under the name of Norteno. In a nutshell, the confidential informant advised that certain inmates whom he identified were using illegally smuggled cellular telephones to oversee the distribution of controlled substances both inside and outside of IDOC. As the investigation progressed, the confidential informant ceased cooperation with the FBI and, in fact, became implicated in wrongdoing himself.

---

holdings and the Supreme Court analysis as applied here, and thus **dismiss the motion to suppress for lack of standing as to both Johnson and Jones.**

Beginning in June 2012, the FBI sought from the court three orders authorizing the interceptions of wire communications to and from **Target Phones I**, **II** and **III,** all of which Judge Magnus-Stinson issued for the period beginning June 20, 2012 and ending on July 20, 2012. Defendant Justin Addler was identified as the primary user of Target Phone I. Defendant Oscar Perez was identified as the primary user of Target Phone II, and Defendant Gregory Hart was identified as the primary user of Target Phone III.

On July 20, 2012, Judge Pratt of this court authorized the continued interception of wire communications to and from **Target Phones I** and **II** to begin on July 20, 2012 and ending on August 19, 2012.[2]

### A. The June 20, 2012, Wiretap Order and the July 20, 2012, Extension Order

The original wiretap application dated June 20, 2012, authorized the FBI to conduct wire surveillance of the communications occurring over three contraband cellular telephones being utilized from inside the DOC by charged co-defendants, Justin Addler (ATarget Phone I@), Oscar Perez ("Target Phone II) and Gregory Hart ("Target Phone III). These lines were being used by the named targets for purposes relating to their engagement in the commission of illegal drug trafficking offenses.

As detailed in the affidavit accompanying the Applications, the law enforcement investigation spelled out the actions of Addler, Perez, Hart and others. Upon careful review of the matters laid out therein, the court found probable cause to believe that each

---

[2] We are informed that all relevant applications, affidavits, and orders authorizing the interceptions of wire communications from all listed target phones for the dates specified have been made available to defense counsel and docketed under seal.

subject was involved in heroin and/or methamphetamine transactions operating from inside the DOC where they were incarcerated utilizing a network of coconspirators with whom they communicated via contraband cellular phones. The court's probable cause determination has not been challenged by any of the Defendants.

On July 20, 2012, the government sought **extensions of authority** to continue the wiretap interceptions on **Target Phones 1 and 2** for an additional thirty day period. Extensive investigative details were set out in this affidavit, as in the prior affidavit, reflecting information gathered from the continuing investigation into ongoing drug transactions by Addler and Perez, whose phones continued to provide the means of communication with and among the other alleged co-conspirators.

### B. The Necessity for Wire Surveillance over Target Phones 1, 2 AND 3

The use of wire taps as an investigative technique is by federal statute limited to situations where traditional methods of investigation are inadequate and such procedures are Anot to be routinely employed as the initial step in criminal investigation.@ United States v. Giordano, 416 U.S. 505, 515 (1974). Each application for wire surveillance must contain Aa full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.@ 18 U.S.C. ' 2518(1)(c). The Government may establish the need for wire surveillance by demonstrating any one of these three alternatives. United States v. Ceballos, 302 F.3d 679, 683 (7th Cir. 2002). This requirement is known as the exhaustion or necessity requirement. United States v. Fudge, 325 F.3d 910, 919 (7th Cir.

4

2003).  Under Seventh Circuit law, the Government's burden of proving necessity "is not great" and its compliance with the necessity requirement is "reviewed in a 'practical and common sense fashion.'"  United States v. Plescia, 48 F.3d 1452, 1463 (7th Cir. 1995) (quoting United States v. Zambrana, 841 F.2d 1320, 1329 (7th Cir. 1988)).

A court should grant a motion to suppress wire surveillance if "the order of authorization or approval under which it was intercepted is insufficient on its face."  18 U.S.C. § 2518(10)(a).  If such a motion is granted, "the contents of the intercepted wire or oral communications, or evidence derived therefrom shall be treated as having been obtained in violation of this chapter."  18 U.S.C. § 2525.

Each application for wire surveillance in this case appears to comply fully with the requirements of Title 18, U.S.C. § 2518(1)(c) in that they both contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be likely to succeed if tried or to be too dangerous."

Agreeing with the Government that its burden of establishing compliance with the necessity requirement is "not great" and that compliance is to be assessed in a "practical and common sense fashion."  (United States v. Ceballos, supra, at 683 (quoting United States v. Zambrana, supra, at 1329), Defendants nonetheless contend that the Government has "not shown why the use of undercover officers, a traditional investigative technique, could not be used as an alternative to a wiretap."  (Pages 2-3, Defendants' Reply Brief) Defendants correctly note that the Government utilized two undercover employees in the early stages of its investigation who made a total of four (4) controlled buys of narcotics,

5

but take issue with the "conclusory," unsubstantiated statement by the Affiant that the continued use of the undercover employees was not likely to result in successful penetration of the alleged drug organization." (Affidavit ¶ 109, Extension Affidavit ¶ 74) Defendants also object to the generalized assertion in the Affidavit(s) that it would take "an unreasonably long time" to place an undercover agent into a position capable of revealing the kind of information necessary to understand the scope of the illegal drug trafficking. (Affidavit ¶ 110, Extension Affidavit ¶ 75)

Defendants' argument, distilled as it is in the final paragraph of its Reply Brief (Page 5), reads as follows: "While the government was not required to exhaust every possibility regarding traditional investigative techniques, neither should it have been allowed to ignore such a technique when it was proving to be both fruitful and cost-effective. Ippolito, 774 F. 2d, at 1486."

Title 18 U.S.C. § 2518(1)(c) specifies three situations under which a wiretap is justified. Even so, it is incorrect to view the authorization of a wiretap as the last resort, available only if all other investigative approaches have been (1) tried and failed, or (2) won't likely bear investigative fruit or otherwise be futile, or (3) are too dangerous. The Government need only demonstrate that other methods of investigation have failed or they appear unlikely to be successful or would be too dangerous. United States v. Adams, 125 F. 3d 586, 596 (7th Cir. 1997).

The Affidavits before us outline in detail the Government's consideration of and its attempts to utilize a wide array of investigative techniques, including informants and

6

undercover agents, telephone records, pen registers, physical surveillance, search warrants, grand jury proceedings, surveillance cameras, trash covers, and mail covers. Because Defendants' motion to suppress challenges only the allegedly premature termination of the use of undercover agents for the ostensible purpose of justifying the more intrusive wiretap procedures, we focus our analysis here only on the issues relating to the undercover agents.

## II. LEGAL ANALYSIS

Defendants contend that the affidavits before us fail to establish necessity for wire surveillance because the traditional investigative technique of relying on undercover agents was abandoned prematurely. Thus, the Government did not establish that that technique was insufficient or unlikely to succeed or too dangerous to employ further as a means of exposing the information necessary to support a prosecution. Had law enforcement officers continued with their traditional investigative techniques, say the defendants, the wiretap orders would not have been necessary. We disagree.

Each of the two affidavits submitted in support of the applications for wiretap authorizations lays out in painstaking detail the efforts made by investigative agents to utilize undercover agents. Undercover agents were deployed early on to make a limited number of contacts which generally culminated in single purchases of heroin or methamphetamine from a person operating under the direction of Addler or Perez. This use of undercover agents was curtailed for reasons fully spelled out by the case agent in his affidavits. These encounters by undercover agents revealed virtually nothing with reference to the identities of others involved in the drug trafficking conspiracy beyond the

7

persons with whom they had direct contact or the nature and extent of their criminal enterprise. Confidential Sources had informed law enforcement prior to the use of the undercover agents that Addler and Perez, who were operating from within the DOC, were respectively high-ranking members of two gangs and that they conducted their illegal drug trafficking enterprises over contraband cellular phones which they had secretly acquired for use from inside the state prison.

After setting forth in substantial detail spread out over more than forty pages the investigative events that had occurred which led up to the request for wiretap authority, Special Agent Craig Tremaroli wrote under oath: "I believe that interception of wire and electronic communications as applied herein is the only available technique that has a reasonable likelihood of securing the evidence necessary to prove beyond a reasonable doubt that the NAMED INTERCEPTEES, and others yet unknown, are engaged in this investigation." (Page 45, Affidavit.)

The Affidavit contains a listing of all the investigative steps pursued by law enforcement over the course of this investigation up to that time, following which Special Agent Tremaroli stated (at page 45): None of the investigative techniques has

> been able to establish when controlled substances will be stored at any given location, or the location of any stash houses being utilized to store controlled substances, the exact details of when and how controlled substances are distributed by the NAMED INTERCEPTEES, the identity of the suppliers of the controlled substances, or the customers for the controlled substances to be distributed. Norman investigative techniques have failed to real the identities of all those participating in the illegal activity, nor have they resulted in

8

> sufficient evidence to successfully prosecute all the NAMED
> INTERCEPTEES for all their criminal activity.

As previously referenced in this ruling, regarding the use of undercover police Officers and agents, Special Agent Tremaroli noted in his Affidavit (Page 51, ¶ 107) that in the early stages of the investigation law enforcement was able to use two FBI UCEs to infiltrate the drug trafficking activities of Addler, Perez and Hart. However, they were able only to make controlled purchases of heroin via transactions facilitated by Addler and Hart over Target Phone 1 and Target Phone 3. He further noted that this limited involvement of the UCEs did not identify the sources of supply, drug proceeds, means of laundering, and other such investigative goals. In addition, members of Addler and Hart's (and Perez's) drug trafficking organization(s) were typically nervous and uncomfortable dealing with white people and were suspicious of people they thought might be connected with law enforcement who were attempting to infiltrate their organizations. Special Agent Tremaroli averred that Addler and Perez tend to rely on trust and longstanding relationships among their associates in conducting their illegal activities and are wary of outsiders, making it extremely difficult and potentially dangerous to attempt to infiltrate the drug trafficking organizations by an undercover agent. Finally, Special Agent Tremaroli stated, the introduction of such an agent would take an unreasonably long time to gain the necessary trust of the subjects and satisfy the goals of the investigation, adding to the danger such a person would face in the context of a long term drug investigation.

In Paragraph 111, Special Agent Tremaroli concluded thus: "As a result, I believe the use of additional undercover agents or officers is unlikely to be successful if attempted, and is too risky to employ under the circumstances surrounding this investigation."

It is important to note that the AUSA assigned to this matter, who submitted the two applications to the Court seeking wiretap authority, stated therein (in Parag. c on Page 6): "(N)ormal investigative procedures have been tried and failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ, as is described in further detail in the attached Affidavit."

Finally, it is also important to note that each of the issuing judges found and recorded in her respective Order, in language mirroring the Application, as follows (Parag. C, Page 4): "(I)t has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ;"

We find no basis on which to fault the investigative efforts outlined in the papers filed with the Court in conjunction with the subject wiretaps or to challenge the assessments and knowledge of the attorneys and agents that further use of undercover employees in this investigation would not bear sufficient results to be fruitful in terms of their investigations or would be too dangerous to pursue. The investigation that was underway when application was made for wiretap authority involved a relatively small, insular, tight knit, possibly violence prone (given the gang memberships and prior criminal histories) group of inmates incarcerated within the state prison facility. Whether and to

what extent prison personnel were aware of or otherwise implicated in the drug trafficking being conducted by the subjects of this investigation would make the use of undercover agents subject to easy discovery by collaborators with the targets. It seems clear to us that the use of undercover agents inside the prison would require that those agents themselves submit to long term incarceration in order to successfully penetrate the operations of the conspiracy – a patently risky and dangerous strategy, not to mention unrealistic, and the sort of long term process that we assume Special Agent Tremaroli was referencing in his Affidavit. Further use of undercover agents would never allow them to overcome their inherent weakness as evidence gatherers in a widespread drug conspiracy because they will forever be limited to single, one-at-a-time dealings with the targets of the investigation. Perhaps this is what defense counsel was hoping for in filing this motion to suppress – an investigation that would have proceeded so slowing and ploddingly that it never would have disclosed the full nature and broad extent of the criminal wrongdoing alleged here as reflected in the Indictment of 40 defendants, whose actions, jointly and severally, are alleged to have spanned over many months, and many states, and involved major quantities of controlled substances, which are the fruits of the properly authorized wiretaps.

Given the low burden which the Government must meet in order to show the necessity of a wiretap, we hold with no difficulty that that burden has been satisfied here. The traditional method of investigation using undercover agents is inadequate and that procedure has @not (been) routinely employed (in this case) as the initial step in criminal investigation.@ United States v. Giordano, 416 U.S. 505, 515 (1974). The facts laid out

in the Affidavit and the corresponding Court Orders authorizing the wiretaps support this finding of necessity and the exhaustion requirement of 18 U.S.C. § 2518(1)(c) has been satisfied. See Ceballos, 302 F.3d at 684 (necessity requirement satisfied when informants/undercover agents could not Afurnish information which would fully identify all members of [the] ongoing criminal conspiracy or which would define the roles of these conspirators sufficiently for prosecution@). Also see Zambrana, 841 F.2d at 1331-32 (finding a wiretap necessary despite some success with normal investigative techniques because those techniques were not likely to identify all co-conspirators at all levels of the drug conspiracy).

Accordingly, we <u>DENY</u> Defendants= Motion to Suppress.3

IT IS SO ORDERED.

Date: \_\_\_\_01/23/2014_____

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Electronically registered counsel of record via ECF

---

3  This ruling applies to Defendants Miller, Heckman, Brock and Dobbins only. For the reasons explained in Footnote 1, supra, the motion is dismissed as to Defendants Johnson and Jones for their lack of standing to challenge the authorized wiretap.